Good morning. May it please the court. I'd first like to thank your honors for the opportunity to address the court in this matter. My client has a number of family members who have followed his case with great interest and passion. Some of them are present in court, and they thank you as well. I'd like to devote almost the majority of my time to the issue of the district court's failure to hold an in-camera inspection of the informant, Mr. DeLeon's, file. Because I believe that that requires a new trial and, at the very least, a remand so that that issue can be sorted out. I have some additional comments on the question of the juror's request to hear the replay of a full tape-recorded conversation that was admitted into evidence but had not previously been replayed. And I think it's helpful to discuss that briefly because the law is a little confusing, and hopefully I can straighten things out. Can you help me with the facts? As I understand it, the court admitted as an exhibit the entire English translation from the Spanish recording, but then the parties only played or read a portion of that transcript to the jury in open court. Is that right? That is correct. And it is unlike those cases in which a transcript or a tape has gone back to the court. Right. So that when, in this case, the jury requested the replay of all or actually they asked for the transcripts, but that was- But they were asking for more. They wanted to hear more or see more than what they heard in the courtroom, correct? That's correct. That is correct. So the question is, and I guess Judge Robart was covering for Judge Jones when the jury question came out, so how did Judge Robart abuse his discretion in following the procedure that Judge Jones had announced at the beginning of the trial that both parties had agreed to? Because the transcript had been admitted into evidence. It would therefore, the assumption of counsel and all the parties, as the court cited in, I believe, the Holton decision that is in my brief, that everyone had the expectation that an item in evidence could be given to the jury for its consideration. But this isn't like a document, is it? I mean, okay, where the jury can go back and read the entire thing page by page, even though they may have only been shown a portion of it in the courtroom. Well, it's unique for probably two reasons. First of all, because it is a transcript of a conversation in a foreign language, the ordinary rule that the tape, which would be the evidence, doesn't control. The transcript is the evidence. So then the second permutation is that rather than introducing the transcript into evidence and having the transcript go to the jury, which is a procedure that I'm familiar with, the court followed a different procedure, which is permitted for the transcript to be read in court. Let me ask you, Mr. Beattie, an analogy to a civil case. Maybe this analogy doesn't follow, because it is a civil case. But we take lots of depositions in civil cases, but we only admit portions of the deposition at the trial. So would your position be in a civil case that the entire deposition would come in, even though the jury only heard a portion of it? Well, I think the rules are different, because in this case the entire deposition, to use that example, was admitted even though it was not played to the jury. Well, admitted or marked as a court exhibit, and I don't know that there was a distinction made at the time that the exhibit was marked, but clearly we mark a lot of things as exhibits in a trial that the jury doesn't get to see. With respect, I believe, and counsel can correct me if I am wrong, that it was admitted into evidence. I don't think there's any confusion about that. It was admitted into evidence. 27A was admitted into evidence in its entirety. Right. That is correct, Your Honor. Let me ask you this. Suppose that Judge Robert was wrong and abused his discretion and should have let the jury listen to the whole of 27A. Do we review for harmless error, or is it structural error? I think it is. I think it is. I have not thought of that question. I think it's actually ‑‑ I have assumed that it's a harmless error. All right. Now, think about this question. I was reading that transcript this morning. The whole theory of Mr. Rosas Martinez was that he was overcome by his fear of De Leon, the confidential informant, and that he really didn't have anything to do with drug trafficking. He had some cousins who were in drug trafficking, which were unidentified Mexican, the voice two and three, and he was unidentified Mexican voice four. But when you start reading the portions which were not read to the jury, it seems that Mr. Rosas Martinez is the big shot in the transaction. He's the one who says to De Leon, all you've got to do is talk to me. Yasta. It's all done when you talk to me. So how does that help you? I think there's actually two responses to that. And one is a procedural one that, as I read the record, the other three participants in the conversation were unidentified. And so one has to draw the inference that unidentified male number four was Mr. Rosas Martinez. Is there any doubt about that? I don't think there's much doubt, but I think nonetheless, as a parenthetical point. So then when we look at what he's, first of all, if you take a look at that 27A, and you take a look at what the other fellows were saying to De Leon about the drug traffic, and they had a very long and repetitive conversation about whether they should deliver in pounds or in kilos. And as they delivered in kilos, might there be something left that they could sell on the side? And whether they wanted 10 or they wanted 12 or they wanted 15 kilos, and who could bring it? And what about the fellows in Atlanta? And they were only good for 90 days. They were wrapped up by the feds. All of that took place in front of your client. That's right. And he participated in that. And I think going to- How does that help him to bring further evidence of this transaction to the jury? I think it goes exactly to the point that he has tried to raise and that his trial counsel tried to raise, that when he was contacted originally by De Leon, and the intricacies of that initial contact are important to the theory of the case, which goes to our other point, he felt that he had no choice. Now, this is a man who had two members of his family killed by drug cartels in Mexico. And so this was never-there was no suggestion that this was made up. He was a man with no criminal history. There was no suggestion that he had ever been involved in drugs before. And so he was involved in, if I might call it this way, the braggadocio of the transaction where everybody's talking about how big they are. You can't really say he was never involved in drugs before when he relates that he was with four or five other people loaded with drugs and was stopped by a policeman and who gave him a warning and didn't give him a ticket. But there's nothing to support that. Well, that's UMV4. What do you mean? It's him saying that he was involved in this thing. I was in the car, and the cop talked to me, and he didn't give me a ticket. He said my light was out. But we don't know that that really ever happened. That's my point. Well, it's what your client stated. On tape, in a situation where everyone is bragging. Oh, I see. So this is just braggadocio. Well, we don't know. That's a page of ER 0232. The jury did not have an opportunity to consider that. Oh, yes, they did. That was part of 27B. That was read in. Sorry. Mr. Miyuki, suppose you have a police officer on the stand in a future trial, and he makes testimony that's contradictory to a police report. A statement in the police report favors your client. You use past recollection recorded to impeach the witness and get the police report in its entirety admitted, but the jury only hears the impeaching statement and never sees the exhibit in the jury room. If what I'm hearing you say today you want us to do is to let the jury see the entire record, you'd allow then, or we should allow in the future, entire police reports to come in, in fairness to both sides, and you run the risk of the jury being bogged down with a great deal of irrelevant and possibly inflammatory evidence, don't you? That's not the case for you, Your Honor. I understand the analogy, but what we have here is a tape-recorded conversation where just this dialogue shows the importance of having a complete venting of that conversation. Yes, but that's what they got, that's what they wanted, that's what was read back, and now you want more. I think the question is not that I wanted more. It's the one tape that the jury requested, the entire transcript, and it's no coincidence. They did request the entire transcript? Yes. That's what led to this. When they came back, first they requested all the tapes. Judge Robart said, well, we're not going to do that. Give us a list of the ones you want. And so they gave a list of the tapes, of the transcripts, and the only one for which they requested both the redacted and the unredacted transcript was 27A and B. And it's also the only tape in which there were the four participants. So I think the jury was trying to sort out who were these participants, and had they been given that information, they would have seen the other comments. Maybe they were braggadocio, too, as well, of the informant with his flowery descriptions of all of his criminal activities, and of the others who were, in fact, the cousins who did bring the drugs up from Los Angeles. Was 27B admitted during the testimony of the informant? Did he authenticate the tape recording? I can't recall. It was admitted, I believe, during the testimony of the ‑‑ I think what happened is the agent testified, and then the transcripts were admitted en masse. So I guess I'm trying to figure out what rule we should announce to guide the district judges in the future. Would the better procedure here be, in light of a request like this, to reopen the evidence and put the offering witness back on the stand so that after the jury has heard the entire transcript, the parties can then examine the witness as to what the transcript contained? I think the better procedure, and then if I could, I'd like to turn to you. Yes, I'll give you a ‑‑ we've kept you on this a long time. No, that's fine. I think the best procedure is for the parties to have a clear understanding of what is going on when this proof comes in. But they did have a clear understanding. The district judge, Judge Jones, said this is how I'm going to handle it if we get a request during deliberations. But where the breakdown was in terms of guiding future counsel is defense counsel always thought he had the opportunity, if the jury requested materials that were in evidence, to have them play to the jury. I thought the judge said we'll give them whatever they hear in the courtroom, or is that where the ambiguity is? That's where the ambiguity is. Mr. Hart is a very fine lawyer and did a good job on this case. And he was sort of flummoxed because the jury requested a key exhibit. He said, I'd like it in. It's evidence. And the judge said no. And I think none of the entire transcripts were sent back to the jury. No transcripts were sent. The procedure was to use readbacks rather than transcripts, which, by the way, eliminates the concern that counsel has raised about structural error because the Noshefar case in which that concept was raised dealt with a situation where the defendant was not present when tapes were played. So all of that is mooted out. It's a good procedure. Excuse me. I have something important to ask you. The issue you wanted to talk about, a district judge, on the good faith of the government, is asked to review in camera an informants file, an entire file. The government says we've turned over everything constituting Brady material, Jenks Act material, whatever. What circuit law or Supreme Court requirement is there to do that? It seems to me you're asking to put an enormous burden on a trial court. Unless there's some showing, which, if there is, I have no problem that the government's not telling the truth about what's been disclosed, why does the district court have to look at, under the Constitution, every single informant file that a defense attorney may request them to look at in camera? First of all, I'm not asking that every informant file be looked at in camera. I'm asking that this informant file be looked at because there were substantial questions about his credibility. The cases that Your Honor have asked for are cited by this Court's decision in Mielke v. Ryan, and it looked to the Kiszewski case, if I'm pronouncing it correctly, which is a case that said that one cannot rely on the government's representations when the credibility of the witness is so paramount as was truly the case. I was on that panel. Yes, I've noted that, Your Honor. So the question doesn't serve. In this case, isn't there? Here, the judge said, when you have a letter representing the Bryan and Giglio material counsel, when you've read that, if you have a further motion to have me review the record based on some good cause, make it. Counsel didn't. And he's a fine counsel. So isn't that the end of it? I think it is not, Your Honor. Why? Because if we look at the context in which that occurred, the first day of trial there were a litany of matters in front of the judge having to do with the procedure for the tapes. Another question about review of discovery. The motions in limine on the gun. All of those things came up. And at the end of that session, the judge says, is there anything else? And Mr. Hart said, yes, there's one more thing. I want to make sure that I need to make a better record on one thing. And then he discussed the question of the confidential informant. I want to remind the court that we did file a motion for the disclosure of the CI file in that case. That motion was denied. The court did not permit discovery of that material and so forth. He asked for that. Now, he did not specifically raise a grant, did not include within that recitation the fact that he was also asking for the in-camera discussion. I mean, you know, I wish that he had, but it's clear. Even assuming that we agree with you that that was an effective renewal of the request, he still didn't provide the district judge with any specific concern as to the informant that the government had withheld Brady material. And as I understand it, there's no allegation that the prosecutor engaged in bad faith here. Well, what I would like to urge in response to Judge Murphy's question and Your Honor's question is that the court think hard about the issue of when should the district court be required to review, conduct an in-camera review. Well, right now the rule is when there has been a showing suggesting that Brady material has not been produced. But I don't know how we articulate a rule that doesn't get us into the concern that Judge Murphy expressed, where the rule is that every time the government calls a confidential informant, the district court has to make an independent in-camera review of the informant file, however voluminous it might be. And I understand this guy was doing a lot of work for DEA on the side here of thousands of pages of material. If I may respond to that, I understand what Your Honor is saying, but I don't think we're breaking new ground here. In the Alvarez case, which dealt with probation reports, the court made quite clear that there was no requirement that there be suppression of the Brady material for the request to be proper. In the Doe case, which dealt with the phone records from the public authority defense, the same thing was true. In the Budziak case, the case involving the FBI computer software and child pornography, there was no allegation of bad faith, and a remand was held to be required. Now, in the Bernal Obasso case, the one that talks about informants and quotes Justice Jackson's comment about the use of informants as dirty business, which is certainly true, exemplified in this case, there was some question about what the government had alleged. Now, there are those cases that counsel cites that talk about phishing expeditions or speculation. The Henke case is one. The Stinson case and the Guzman-Padilla case. But all those cases dealt with, I hate to say phishing expeditions, but there was no suggestion that there would be anything that would be exculpatory in the files that were being produced. But where does Mr. Hart say anything other than I think I'm entitled to the whole file? I want to see it, or I want at least the district court to look at the whole file. Well, he said very clearly, Your Honor, in the hearing on February 9th, that he wanted an in-camera investigation, and he gave exactly the same reasons that the Supreme Court of the United States said are needed in Pennsylvania v. Ritchie. And the judge said, well, when the government makes its disclosure, you can renew your request if you still have concerns. And, I mean, as I read what he said just before trial, it was just a general, I think I'm entitled to whatever's in the file. I would say, Your Honor, that he was trying to accommodate the court's schedule, and he wanted to say as briefly and succinctly as he could, I am not waiving anything. And I don't think that he should be punished or my client punished because he was attempting to be succinct and briefed and didn't specifically say my motion also includes that the court renew this. But even if one ---- Mr. Ritchie, I've let you go over here quite a bit of time. Let's hear from the government. Okay. All right. Ms. Miller, good morning. Good morning, Your Honors, and may it please the Court, T.O. Miller on behalf of the United States. One quick point with regard to the transcripts, and then I'll address the issue about the informant's file. At page ER 54, 54 of the excerpts of record, the district court actually made clear there wasn't an ambiguity about how the transcripts would be handled during deliberations. The district court said this is before trial, but I think the preferred method and the method we are going to utilize is to have the transcript excerpts read in open court. If for some reason the jurors have a desire to hear that portion of the testimony be read to them again, because it's in the Spanish language being translated, they can come into open court and we can accommodate it. So the court was clear that it had to be read during the trial in order for the jury to be able to have access to it during deliberations. Can I ask you ---- The whole of the transcript was admitted into evidence. I mean, the fact ---- Let's take another case. Let's suppose that the whole of a hospital record is admitted into evidence and the doctor testifies only as to a portion of it. Does that mean that only that portion can be read back if the jury wants to receive the whole of the record and pour through what they think they were not told from the evidence? Your Honor, I think ---- Where is the rule? What is the law? What is the case? What is the text of evidence that says that you cannot present new evidence in a readback, which was not read during the trial? Your Honor, NUSHVAR says that. Who? This Court's decision in NUSHVAR says that it was error. Will you spell that for me? Yes. It's N-O-U-S-H-F-A-R. It says that if it hasn't been read to the jury, although it's in evidence, the court has the discretion not to read it even though the jury asks for it and it is in evidence? Actually, it's stronger than that. In that case, it was tapes, and they were tapes that were admitted into evidence, tape recordings, and the jury played them. The court allowed the jury to play them. It gave them a tape recorder. They were not played during the trial, but the court gave them a tape recorder and the tapes, and the jury listened to them or had the opportunity to listen to them during deliberations, and this Court said that was error. There's something I can't understand. It's the same case. Excuse me? That's not the same case. Well, Your Honor, it stands for an important principle, which is that a jury during its deliberations may not consider evidence that wasn't presented to it at trial, and there's no question. But it was presented to them at trial. The documents were admitted into evidence. Your Honor. Am I wrong about that? You're absolutely right that the court that it was offered into evidence and the court said admitted. Admitted, right? Admitted. So now, does that mean that the jury can't say we'd like to see that and go through it ourselves? Because we don't really think that the attorneys were that good in this case, and we want to do our own investigation. This is 12 angry men, right? I don't think so, Your Honor. I think Turner v. Louisiana and Nushvar make clear that admitted doesn't have the sort of significance that defendant has suggested here. The court has a gatekeeping function under Federal Rule of Evidence 104. Cite me a case, would you? Cite me a case where the court has said if it wasn't played for the jury during the trial, even though it's an evidence, the jury cannot see evidence that has been duly admitted. One case. Yes. I don't mean to be contentious, but in Nushvar. Just the other way around. It wasn't played at all in the case. But it was admitted. The court said these recordings are admitted. That's not the case. I'll try again. Take this case. There's a document under the 27A. Only 27B is read. Tell me a case that says under those circumstances the rest of 27A can't be read. One case. Your Honor, I don't have a case that says both of those. No, and you don't have a rule, and you don't have a text, or you don't have any other thing. Well, if not, I do. Now, let's talk about harmless error. Okay. I agree, Your Honor, that there was no prejudice from the court. Why? The district court's ruling. Because there isn't any additional information in the transcripts in 27A versus 27B that would be helpful to the particular informant. Let's take that in baby steps. If you take a look at 27A until you get to the portions of that transcript which become 27B, you'll see that the confidential informant and UMV2 and UMV3 are doing all the talking. UMV4 comes in every now and then with a little something like, yeah, you talk to me. I'm the guy you have to talk to. They busted these people in Atlanta in 90 days. It comes in very tangentially. Does that fit in with the whole theory of the appellant that he was not a really important player in this and he was going along because he was afraid? I don't think it does, Your Honor. Okay. Tell me why. Well, there are a couple of factual points on which the defendant and the informant agree that are critically important to the entrapment defense, the most important of which is that they both agree that every word they said to one another about methamphetamine is on tape. So the jury had the opportunity to assess any evidence of pressure that went to the sale of methamphetamine. But they didn't hear 27A. Your Honor, they didn't hear 27A because the defendant chose not to present it to the jury during the trial. Well, he chose to present it when the jury asked for it. Well, Your Honor, and the procedure is different than those that had been announced to, and he had explicitly endorsed it. I know the procedures were announced, but the judge, it doesn't happen very often, but sometimes district court judges are wrong. That's right, Your Honor. But I think it's opportunistic to say at this point, given that he had the first methamphetamine. Of course it's opportunistic. A trial is opportunistic. It's opportunistic and unconvincing because there's nothing in those transcripts. That's what I want to get to you. Okay. I want your best take on why 27A doesn't make Rosas-Martinez a bystander who's in fear of De Leon. Nothing in that transcript, in the full transcript, evidences fear or reluctance. Okay. He doesn't say a lot. You're right. He doesn't say as much as the other participants. But he says, I'm the person you should call when you're ready to have my cousin and his companion come up from California to conduct this transaction. That undermines his entrapment defense, and that's why this was not prejudicial. I don't understand the whole procedure here. There's a consensually monitored conversation. The tape's never offered because it's all in Spanish, correct? Yes. An English translation is made and marked as 27A. It's offered and admitted, right? 27 was also offered. The tape itself was offered. The tape was offered. Did it go in? Yes. Okay. So the tape and the entire transcript in English is in, right? Yes. To Judge Bea's point, in light of U.S. v. Richard, which found that partial readbacks have rather consistently met with this favor, why didn't the judge just send the whole transcript back into the jury room and let them look at whatever they wanted to look at? Richard, I believe, is talking about readbacks of live witness testimony during the trial. Well, I agree with that. Okay. But the point is still made in the decision. Right. Go ahead. I think it is commonplace during a trial for, in a wiretap case, for example, there might be hours and hours and hours of material that's recorded, and only some part of that is relevant to proving the government's case. Okay. So I think Richard's answer is true. Was that true here? How many pages was 27A? 65. Okay. 27B is, I think, well, I can check. Don't worry about it. I just don't understand why the judge just didn't simply submit 27A with the drugs and the tapes and everything else and just let the jury look at all the evidence. Well, for two reasons. It isn't the procedure that was agreed to at the beginning of the trial. And the judge, I think, was correctly reluctant to allow the jury to deliberate based on information. It wasn't a procedure agreed to. Are you taking the position the defendant stipulated that what 27B were read to the jury, 27A would not be available to the jury if they asked for it? Is there such a stipulation in the record? Your Honor, ER 53, the court says, what we're going to do is we're going to do readbacks rather than playing the recordings. We're going to give the jury the transcripts to read along. And the government said, we would prefer that they go back to the jury, the transcripts. And the defense counsel said, no, it's our position that it places undue influence on the transcripts, particularly if we're just doing excerpts. All right. But that's undue. That's a quite different issue. That issue is the transcripts themselves, if they go back to the jury room, there's undue influence because of their document. They read the documents. But that's not the issue. The issue is, is it your position that the defendant stipulated that only 27B should be read back? Your Honor, it's my position that the district court announced that that's what would happen. Ah, that's different. You said an agreement a moment ago. An agreement takes two people. A district court takes one person, right? Well, Your Honor, defendant didn't object when the district court said that. So there's a waiver of an objection? Is that your position? Well, Your Honor, yes. He didn't object when the district court announced that that would happen. Have you briefed the issue of whether the objection has been waived by failure to object? No, Your Honor. I didn't think so. Okay. Again, I think that the easiest way to decide this issue would be to decide that there's nothing in 27A that adds to the defense as reflected in the judgment the defendant made not to present it at trial. If I may, I will. You may. But I'm going to ask a question. I'm going to make sure I've got the right portion here. It looks like ER 10, but it's page 7 of the transcript. The court says, I think the preferred method and the method we're going to utilize is to have the transcript excerpts read in open court. If for some reason the jurors have a desire to hear that portion of the testimony re-read to them again because it's in the Spanish language being translated, they can come into open court and we can accommodate it under those circumstances. So unless there is any other significant objection, that will be the order of the day. All right. Let's move to the next issue. And Mr. Hart doesn't say anything. Correct, Your Honor. So the position is because he didn't object, he acceded. That, Your Honor, and there's no prejudice. Okay. All right. Now you may move on to whatever you wanted to move on. Okay. Thank you, Your Honor. I'd like to address the issue of the request to review the informant file in camera. I think the critical factor, and Judge Tolman, your question sort of got to this, is that when defendant made the request to review the file himself or to have the court and the alternative review it in camera, no disclosures had happened. So when he renewed that request, he – it was – That was in February, right? That's right. And on the first day of trial – and on the first day of trial, at that point, he had gotten the Brady and Giglio disclosures. And he said, I want to renew my objection to your ruling that I can't have access to the defendant's file. But he said nothing about what had been disclosed and the way in which he believed it was inadequate. So that's why we think that this is reviewable for plain error, is that he didn't put before the court whatever it was he felt made a plausible showing that he was entitled to. But does he have to say more than I renew the motion that I made before? And the motion clearly before was to do an in-camera review. Your Honor, but that motion was made on a dearth of evidence. Nothing had been disclosed yet, and that's what the court said in response to denying that motion, is you've made no showing. You have to wait until you get the disclosures, consider them, and tell me what was inadequate or suggestive about them. He got the disclosures, and he never took that second step of saying – He didn't make a showing. He didn't make a showing. Which is what I was questioning Mr. Buki about. Yes, exactly. You've got to do more than just say I repeat my request to see the whole file. Exactly, Your Honor. Exactly. And so that's why we think this is reviewable for plain error. As to whether there's any – there's no showing here that the defendant was entitled to in-camera review, here all he says is I got some pretty damaging stuff about this informant, therefore there must be more. And if that's enough, then any case in which there is an informant would be able to make a similar showing. Well, what should he have said? I mean, how could he have been tipped off that there was more and be specific about his request? Well, there are examples from this Court's cases. Bernal-Obeso. There's a case from this Court called Bernal-Obeso in which the government five days late, meaning after the deadline for disclosing, said oops, we failed to disclose a criminal offense by the defendant, and then a couple days after that had to clarify the late disclosure they'd made. And this Court said this is enough to indicate to us that the criminal defendant was lying to the government about his criminal record, and that's a trigger for in-camera review. Here we have nothing remotely like that. There's nothing that calls into question either the government's good faith or something about the defendant's activities that suggests the government might in good faith be missing something. My final point with regard to this issue is that the defendant's or the informant's credibility is only relevant in this case in sort of a glance way, excuse me, because the informant and the defendant, all of their conversations about methamphetamine was on September 28th, and that every conversation they had after that was on tape. So the jury was able to assess what sort of pressure was undertaken even if they found the informant not particularly credible. So this isn't a case, a swearing contest, no other evidence. The informant says he did it. The defendant says I didn't do it. Here the defendant says I did it, but I was entrapped. But the amount of pressure put to bear on the defendant is all on tape. If there are no further questions, we ask that the judgment be affirmed. Roberts. Mr. Pepe, I'll give you a minute on rebuttal. Thank you, Your Honor. Just two quick citations and one point, if I might. On the question of the tape, the Holton case, which is a District of Columbia case, talked about when tapes are admitted into or when transcripts are admitted, the better practice is that they be admitted so that the parties will be apprised of the fact that the document could be given to the jury. And so that gets to the point I was raising before, that this was in evidence. On the question of the government's duty, or the court's duty to conduct an in-camera inspection, the Kiszewski case that I cited clearly talks about a court should not rely on the government's representations regarding Brady materiality, and that's, as Judge Peja pointed out, was cited by this court in Mielke. But I'd like, if I could, just to briefly address, Your Honor, Judge Murphy's question about whether this is burdensome on the court. And I guess I would put it in this context, and I hope it is not heretical to say this. There are not a lot of cases that are being tried these days. I think Chief Judge Peckman told us at a meeting of those of us who do this work that there were something like 21 cases that went to jury last year in the Washington, and this was one of them. Thirteen judges? Right. And Judge Jones worked very hard in this case, and all the counsel worked very hard. It would not have taken a lot of time to conduct an in-camera inspection when the law requires that such inspections be conducted. And when the defendant is facing, as he is, and regrettably serving 15 years in prison for conduct which is obviously a junior member of this at best. And so I would only urge the court that the court consider those stakes when considering this issue. Judge Tallman and I. I have to respond. We agree. And, frankly, if the law says that there's questions about the veracity of the assistant U.S. attorney misconduct by the drug enforcement agent or gross unreliability of an individual informant, I think all those factors would trigger, under the law cited by Judge Tallman, the need for independent review. My question is whether that's present here, and that's what we're looking at. And I think the latter, the gross unreliability of the informant, is certainly present. If you look at the litany of his misdeeds, and I would, frankly, encourage all the members of the panel to read his testimony, and particularly the ABLE cross-examination by Mr. Hart, where he did double backflips. The witness did double backflips on how much drugs he had started. First he was like, you know, a pound of meth for two years, $1.2 million, and then it got rapidly down to something less than that. Judge Tallman and I are familiar in the case from our prior iterations as lawyers, the Bagley case, which came from this district. And the Assistant United States Attorney, God rest his soul, in that case was one of the most ethical and principled people we all know. But nevertheless, there were these squirrely records of Bagley being paid rewards that should have been disclosed and led to literally a case in the United States Supreme Court. The Milkey v. Ryan case is a tragedy of justice, and fortunately this court has rectified. She's going to trial again in January. Okay. But one thinks of what that narcotics detective did. The Brady Rule is so important. It's the bedrock of our system of justice, and the right that an individual has to have an Article III judge review that those materials, who is not involved in what the Supreme Court long ago said was the competitive enterprise of ferreting out crime, is a linchpin of that right. And that is important in this case. Was it Bagley where the DEA agent gave the son $5 in order to get him to rat off what he knew about the father? All I know is that there were rewards that were given. The irony is I know one of our colleagues, Mr. Martin, represented Mr. Bagley. Mr. Bagley is apparently doing extremely well as a citizen. He has lived a crime-free life since 1985. Well, that's good to hear. Yeah. All right. Thank you, Mr. Milkey. And Ms. Miller, the case just argued is submitted. Very able argument. Enjoyed it very much. We'll give you our best answer as soon as we can. We'll stand in recess for about ten minutes, and then your argument in the last. Thank you.
judges: Murphy, Tallman, Bea